All right, our final case for this morning is United States v. Bogdanov. Mr. Walker. Good morning, Your Honors. May it please the Court, Murdoch Walker for Mr. Branko Bogdanov. The question before this Court today is one of preponderance of evidence. It applies to both the issues before the Court, the total loss amount according to the United States Incident Guidelines, as well as that of forfeiture. May I put it in more certain terms? Say we have a serial killer and say we have three murders and say we have concrete evidence tying that serial murder to those three murders, the government would prosecute. But say also we have an incredible witness, and this incredible witness has a relationship with the serial murderer. And he, for whatever reason, is incredible. Everything is subject to a question of veracity. And he purports to suggest and allege that the serial killer is also responsible for seven other homicides. Well, there are seven murders, and he is a serial killer, yet no government in our criminal justice system would impute liability, even at a preponderance of evidence, which you can only think of as under a relevant conduct theory. Actually, that happens all the time. Sentences are enhanced based on a finding by a preponderance of the evidence that the defendant committed some other crime. I absolutely agree. I just don't think that that would rise to the preponderance of evidence that this system would impute that high of liability. Well, but you're getting around to the fact that you don't think Individual A is a stellar citizen, which I'm sure Individual A is not. I'll go with you there. But that's quite common, and there's quite a bit of circumstantial evidence that was before the district court judge that Individual A's account of millions of dollars over a very long period of time, 10 years, 7 years, it doesn't matter, a long time, was being used. The district court looks at this and says, I think you're reliable enough to base the sentence. First, the total intended loss, the greater than 3.5 million, and then she discounts it back, the 2.8, very low acquisition cost if you're just stuffing them in the skirt linings. So the 2.8 may be closer to the final number than we might see in some other instances. So I don't know where her legal error is. She says she's estimating. She says, I'm not required to match up each American Girl doll to each sale on eBay or each Lego set. She's not required to do that. So I don't know where, under the rules that apply to sentencing, there's something reversible here. Well, Your Honor, what I would suggest is that you look at the whole calculation, and Individual A makes a representation that 90 to 95% of the merchandise he receives is from Mr. Bogdanoff. So she goes down to the 90%. She takes the conservative number. Well, that would be what the agents did as well, yes, which would be the conservative number. The loss amount, they actually go down an additional 25%. Correct. Subtracting the retail from the forfeiture. But even Individual A does not suggest that all of the merchandise he receives is stolen or stolen at all. But there's no evidence in the sentencing record that any of it was legitimately acquired. I don't see why the judge isn't entitled to take that gaping failure of evidence into account. I agree with that as well. But Individual A... And no evidence in the record of so much as a single Toys R Us or Barnes & Noble or other transaction that's legitimate, and all this money. I mean, they have the eBay accounts, right? They've got PayPal. You know, they've got everything. Well, they're assuming that the PayPal accounts and all these financial accounts are all stolen merchandise and all came from Branko Bogdanoff. Well, right. And so I'm asking you what evidence... We've got some evidence from Individual A. We have evidence from the investigator that there was this theft ring. We've got video surveillance that thefts were going on. We have some decent reason to think that this is the result of a shoplifting ring. And I would think if I were Mr. Bogdanoff and I could do it, I could say, no, actually, you know, I, you know, for some reason, was buying all of this stuff. And here are my receipts. And here is my cost of doing business. And there's nothing like that here. Yes, Your Honor. There's, I would argue that there is some evidence that has been in the record that certainly supports the thefts and supports that he was involved in that. He even admits it in the plea agreement. And I don't think the... You don't even worry about that. He pleaded guilty to all of this. Well, he did. He pled guilty to stealing merchandise. He pled guilty to knowing Individual A. And transporting it in interstate commerce. That was the charge. Yes, Your Honor. But he did not admit or... Which was, I gather, the amount that the district judge concluded that Individual A received. Did the district judge ever estimate how much Bogdanoff received? Well, no, the district judge only ruled that $2.8 million based on the evidence proffered at the evidentiary hearing. No, no, no. It's not which evidence. It's who got it. Well, no. The forfeiture... Did you ever ask the district court to determine how much Bogdanoff personally received? I'm asking this because the difference between the total take from a criminal conspiracy and the personal take for the defendant is a question before the Supreme Court right now in Honeycutt, which was argued last month and is now under advisement. So far as I can see, there's no Honeycutt-like argument in your brief. Am I missing something? No, Your Honor. And that specific inquiry was not made. I personally came on the case late and preserved the issue. This was after the evidentiary hearing and the ruling by the court. My concrete question was, is there any argument along the lines of Honeycutt in your brief? I didn't see it. I missed anything. The answer is no. Although the presumption in the position of the loss amount in the government is that this is attributable to Mr. Bogdanoff because Mr. Bogdanoff... That individual A didn't get anything in this 90% range that didn't come from Mr. Bogdanoff. So it went first to Mr. Bogdanoff and then to A. Which could be thought of as Mr. Bogdanoff's. However, what our position is, is that the individual A has made a representation of receiving the merchandise from Mr. Bogdanoff of 90-95%. That requires veracity. Nonetheless, he's never ever stated that it was stolen. Nonetheless, you have the financial records here and you have just missing product here. But you have never connected the missing product with Mr. Bogdanoff per se. You've connected the missing product to the financial records of which they have looked at with Mr. Bogdanoff's family. Which there's no relationship to the missing product to those financial records or to individual A. Mr. Walker, you claim that the government ignored proper corroborative evidence that these goods were obtained legally. And I don't see any evidence that was offered below by the defendant that they were obtained legally. Within the records themselves, there were eBay purchases related to car parts and mechanic work. That was something that Mr. Bogdanoff had represented that he was in the business of. Now, there's a lack of, I'm going to finish my thought here. But there's a lack of corroborative information regarding his finances and tax returns for any legitimate income, which is what the government has said. But that ignores the challenges of his status and his citizenship and the like. And I'm just saying that it was there and it was indicative in the record of the evidence collected. Do you have any other questions? I don't think so. Okay. Thank you, Mr. Walker. Mr. Havey. Good morning, Chief Judge Wood, Judge Easterbrook, Judge Fahl. May it please the Court, the sentence that was imposed by the district court should be affirmed and it should be affirmed in its entirety. So I had some qualms along the lines of what Judge Easterbrook was alluding to about how we got to the lower forfeiture number, recognizing, as obviously you know, that the total loss for sentencing guidelines purposes is a different number. So the $2.8 million roughly represents the total amount of goods that were sold online via the accounts. That's the district judge's estimate of how much individual A got by selling on eBay. Is there an estimate of how much the defendant, Bogdanov, got from those sales? There is not, Judge, and for two reasons. Assuming the Supreme Court reverses in Honeycutt, isn't that essential? Well, Your Honor, I think we would take the position. I don't obviously know how the court's going to come out. The issue was not raised in the district court. No, I understand that issue was not raised. And, of course, I understand that your position, and the one the Solicitor General took in Honeycutt, is that the defendant can be ordered to forfeit the total amount gained by any of his confederates. And, of course, the opposite argument is that forfeiture is fundamentally an in rem proceeding, and you can't forfeit what you never got. Right, so if individual A gets $2.8 million, it actually stands to reason that individual A is trying to get a little profit for himself on it, or herself, or whoever individual A is. And so the number is likely to be less than $2.8 million. Well, it's not as if, Your Honor, we're seeking to hold him accountable for some stolen goods that the co-conspirator took that he never saw. He did get the goods. He got the goods, but not $2.8 million. Usually, the fence gets at least 50%, often more. In Dickens, much more. I don't know what individual A's particular cut was. Your Honor, I guess I would argue that he did get all $2.8 million. The fact that he decided... And individual A did this out of love for Bogdanov and not for any personal gain? No, he certainly... You must be putting me on. He certainly made profits, Your Honor, but my only point is... Exactly. Individual A made a profit, and that means that Bogdanov got less than $2.8 million. He certainly did, Judge. I would not dispute that. Right. That's why... So where does the $3.5 come in? Is it the government's theory that it's the difference between $3.5 and $2.8 that went to A, or is... No. No, I don't think so. The additional amount... The $3.5, as I understand it, is the retail value of what toys are us lost by not selling it. Exactly. Thank you, Judge. And that amount was subtracted off the $3.5 to come to the $2.8. But no further subtraction to account for A's profit. I take the point. I would just argue these two were working together. The defendant was the source in that he stole every item, not some other co-conspirator. It came from him. He and his wife and their daughter, apparently. He did not get 100% of the profits, but he's 100% responsible. That's what I would argue. No, I respect that. That's the Solicitor General's argument in Honeycutt. But obviously the fact that the Supreme Court has granted certiorari at Honeycutt's request suggests that they may not be entirely persuaded. I respect that, Your Honor. And that calculation was not done. And not to beat a dead horse, the issue was not raised. So is it at all meaningful that this thing is called a preliminary forfeiture order of $2.8 million? What happens after that order is entered, there's publication and service, and then third parties can come in and request a hearing to contest the amount. Individual A could come in. That order was entered a while ago. So we did not seek a final order until the appeal is over. So things can still happen, obviously, Your Honor. Okay. With regard to the dollar amount itself, I would just add to what's already been stated. The defendant did not dispute below the actual numerical calculation, the $3.7 million, the $2.8 million, how much individual A got from the defendant. He conceded all of those facts, and it's in writing in their written briefs. And to a lesser extent in the plea agreement, he conceded the length and breadth of the conspiracy that he dealt with, individual A. The only question that was presented to the district judge was whether the goods were stolen. And frankly, all of the evidence in the record points in that direction, as Your Honor recognized. The question is, what's more likely than not, right? That's the standard. And it's obvious when looking at the totality of the record that these goods were stolen. And the story that the defendant gave to the CI where he got the goods, that's supported by nothing. In fact, he was using a fake name when he was dealing with the CI. When he was stopped by police officers in Mississippi, he told them he got the goods from a flea market. Yet another story. There were no records presented of some sort of supplier. And then we have this unexplained wealth. Big house in Northbrook, multiple cars, five or six cars, which is detailed in the PSR. He's supporting himself, his wife, who did not work at all. And then there was tax information, several years' worth of tax returns, which were provided to their probation officer, which was entirely inconsistent with somebody who had to be making a sizable amount of money if he was going to be buying these goods legitimately and then selling them to the CI. So I would submit, Your Honor, that the district court made the correct conclusion. She made detailed findings of facts. She didn't rush the parties. There was a year that elapsed between the time of the guilty plea and the sentencing, so the defendant had all the time in the world if he wanted to supplement the record with financial records, and I suspect he didn't do that because they didn't exist. She gave parties ample opportunity to argue the issues. She correctly applied the law to the facts. I don't think there's a dispute about that. And she made a permissible inference from the evidence that's in the record. So I think the standard of review here, Your Honor, compels the only conclusion, which is that the judgment of the district court should be affirmed. Is there an estimate in the record of the value of the assets the United States has been able to seize so far to carry out the forfeiture? Nothing has been seized so far by the government, Your Honor. Including cars? He's still driving a whole bunch of cars around. He has sold one of the cars. Two of the cars are jointly owned with children, and he still has three other cars. Again, none of that has been seized awaiting the outcome of the appeal. I would just add in terms of the- That doesn't sound-basically allowing him ample time to fritter away the assets. Well, Your Honor, the biggest asset of all is the home, which is valued at roughly $1.7 million. There's a small mortgage on it. That's going to be seized if the judgment is upheld. The cars, they're probably-the value is in the PSR. I don't have those numbers in front of me, but when you're talking about seizing a car and selling it, oftentimes it's more trouble than it's worth in terms of auctioning cars. You're now looking at a blue brick value and then paying an auctioneer. Really, the real estate here is the main asset, and that will be-the government will seek to seize that if the judgment is upheld. If there are no further questions, I will sit down. Thank you, Your Honor. All right. Thank you. Apparently not. Mr. Walker, your time ran out. I will give you a final minute if you have anything else to say. Well, Your Honor, I think we're all set. All right. Well, thank you very much then. Thanks to the government as well. We'll take the case under advisement. The court will be in recess. Thank you.